IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.:   6:09cv1906-ORL-18KRS

WARNER BROS. ENTERTAINMENT INC.,
DC COMICS, NIKE, INC., SANRIO, INC.,
and DISNEY ENTERPRISES, INC.,

        Plaintiffs,

vs.

JJ GENERAL MERCHANDISE LLC
d/b/a JJ DISCOUNT, HEMCHANDER
LALL d/b/a JJ DISCOUNT, and
SITIR LALL d/b/a JJ DISCOUNT,

        Defendants.

_____/

## COMPLAINT

Plaintiffs, Warner Bros. Entertainment Inc., DC Comics, Nike, Inc., Sanrio, Inc. and Disney Enterprises, Inc. (hereinafter "Plaintiffs"), by and through their undersigned attorneys, allege for their Complaint as follows:

## INTRODUCTION

1.    Plaintiffs file this action against the Defendants who have unlawfully engaged in the importation, manufacture, duplication, distribution, sale, or offer for sale of counterfeit shoes, jewelry, watches, toys, beach towels and other merchandise bearing exact copies or colorable duplications of Plaintiffs' trademarks, copyrights, or other exclusive properties.

2.      For violations of the Federal Statutes alleged in the Complaint, Plaintiffs seek a Permanent Injunction, damages, costs and attorneys' fees as authorized by the Lanham Act and Copyright Act.

JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1338(a) as the Plaintiffs' cause of action arises under the Copyright Act, 17 U.S.C. §101 and the Federal Trademark Act ("Lanham Act"), 15 U.S.C. §1051. Further, this Court has jurisdiction over the Plaintiffs' pendent and common law claims pursuant to 28 U.S.C. §§1338(b) and 1367.

4.      Venue is proper within this District pursuant to 28 U.S.C. §1391(b) and §1400(a).

THE PARTIES

Plaintiffs

5.      Warner Bros. Entertainment, Inc. ("Warner Bros.") is a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business in Burbank, California. Warner Bros., or one of its wholly owned subsidiaries, is engaged in a variety of businesses including, without limitation, the production, distribution and broadcast of filmed entertainment, including motion pictures and television programming.

A.      Warner Bros. is and has been for over 75 years one of the largest and well known producers and distributors of feature films in the world. Today,

motion pictures are distributed by Warner Bros. through its subsidiary, WB Studio Enterprises Inc. Other subsidiaries of Warner Bros. include Warner Bros. Home Entertainment Inc. and Warner Bros. Consumer Products Inc.

B.    A significant aspect of Warner Bros.' business is the merchandising and licensing of distinctive copyrights associated with its media product, specifically including the *Looney Tunes* animated shorts. The distinctive trademarks and copyrights licensed and/or merchandised by Warner Bros. Consumer Products Inc. include, but are not limited to, the world-famous characters featured in such programming and films, specifically including the character "Tweety" (hereinafter individually and collectively referred to as the "Warner Bros. Characters").

C.    The revenue from products sold in the United States which use the Warner Bros. Characters is substantial. The appearance and other features of the Warner Bros. Characters are inherently distinctive and serve to identify Warner Bros. and its licensees as the source of products bearing the Warner Bros. Characters. The design, configuration and distinctive features of the Warner Bros. Characters and other Warner Bros. copyrighted works, and of works related thereto (hereinafter individually and collectively referred to as "Warner Bros.' Copyrighted Designs") are wholly original with Warner Bros. and, as fixed in various tangible media, including merchandise, are copyrightable subject matter under the United States Copyright Act, 17 U.S.C., §§101, et seq.

D.     Warner Bros. has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to the copyrights to Warner Bros.' Copyrighted Designs, and Warner Bros. owns one or more certificates of registration for works in which each of Warner Bros.' Copyrighted Designs appear. A representative list of copyright registrations for Warner Bros.' Copyrighted Designs is attached hereto as Exhibit A.

E.     Warner Bros. and those acting under its authority have complied with their obligations under the copyright laws, and Warner Bros. has at all times been and still is the sole proprietor or otherwise authorized to enforce all right, title and interest in and to the copyrights in each of Warner Bros.' Copyrighted Designs.

F.     Warner Bros. is the owner of world famous registered marks which serve to distinguish Warner Bros. products. Each year Warner Bros. spends millions of dollars to develop and maintain the considerable goodwill it enjoys in its trademarks and in its reputation for high quality. A representative list of trademark registrations for the Warner Bros. Characters is attached hereto as Exhibit B (collectively the Warner Bros. Trademarks").

G.     The Warner Bros. Trademarks are all valid, extant and in full force and effect. Warner Bros. Trademarks are all exclusively owned by Warner Bros. Warner Bros. has continuously used each of the Warner Bros. Trademarks

4

from the registration date, or earlier, until the present and at all times relevant to the claims alleged in this Complaint.

H.     As a result of advertising and sales, together with longstanding consumer acceptance, the Warner Bros. Trademarks identify Warner Bros.' products and authorized sales of these products. The Warner Bros. Trademarks have each acquired secondary meaning in the minds of consumers throughout the United States and the World. The Warner Bros. Characters, Copyrighted Designs and Trademarks are collectively referred to herein as the "Warner Bros. Properties."

6.     DC Comics ("DC") is a New York General Partnership consisting of E.C. Publications, Inc. and Warner Communications Inc., having its principal place of business in New York, New York. DC is engaged in the business of publishing comic magazines and is among the most well-known and successful publishers of comic magazines in the world.

A.     A significant aspect of DC's business is the licensing of distinctive trademarks and copyrights associated with its highly successful and well-known characters "Batman," Superman," "Swamp Thing," "Wonder Woman" and "The Flash" (hereinafter individually and collectively referred to as the "DC Characters"). Of these, two of the most successful have been Batman and Superman.

B.     Batman first appeared in the May 1939 issue of "Detective Comics." Numerous related characters, including "Robin," "The Riddler," "Two Face," "Catwoman," "The Penguin" and "The Joker" as well as other popular

characters associated with Batman were soon introduced to the public. (Batman and the related characters are hereinafter collectively referred to as the "Batman Characters"). Superman appeared at least as early as 1938. Numerous related characters, including "Clark Kent," "Lois Lane," and "Lex Luthor" as well as other popular characters associated with Superman were soon introduced to the public. (Superman and the related characters are hereinafter collectively referred to as the "Superman Characters").

    C. Since their introductions, the Batman Characters and Superman Characters have been featured in many formats including movie serials, newspaper comic strips, radio shows, animated television series, live action television series, animated motion pictures, live action motion pictures and theatrical presentations, among others. Television series featuring the Batman and Superman Characters have since been in continuous television syndication in the United States and abroad from 1966 through the present. These appearances have expanded the popularity of the Batman Characters and Superman Characters beyond the comic book medium and market.

    D. The Batman Characters have also been featured in numerous theatrical motion pictures since their introduction. The most recent motion picture featuring the Batman Characters, "The Dark Knight," was released on July 18, 2008, and has generated over $530 million dollars in domestic box office receipts and over $465 million dollars in international box office receipts. Such motion pictures include

"Batman," "Batman Returns," "Batman Forever," and have resulted in domestic gross box office in the millions of dollars, not to mention additional revenues from syndication rights and home video distribution. "Batman" proved to be among the most successful licensing and merchandising ventures of all time, with gross retail sales of associated licensed merchandise exceeding $1,000,000,000.

E.     The Superman Characters have also appeared in numerous theatrical motion pictures since their introduction. The most recent motion picture featuring the Superman Characters, "Superman Returns," was released on June 28, 2006, and has generated over $167 million dollars in domestic box office receipts and over $77 million dollars in international box office receipts. The Superman Characters have also been featured in numerous other theatrical motion pictures, including a series of four motion pictures starring Christopher Reeve. Such motion pictures include "Superman," "Superman II," "Superman III," and "Superman IV The Quest for Peace"; and have collectively generated over $319 million dollars in domestic box office receipts and over $251 million dollars in international box office receipts.

F.     The revenue from products and services using the DC Characters sold in the United States is substantial. The appearance and other features of the DC Characters are inherently distinctive and serve to identify DC and its licensees as the source of products and services bearing the DC Characters. The design, configuration and distinctive features of the DC Characters and other DC

Comics copyrighted works, and of works related thereto (hereinafter individually and collectively referred to as the "DC Copyrighted Designs") are wholly original with DC Comics and, as fixed in various tangible media, including, without limitation, merchandise, are copyrightable subject matter under the United States Copyright Act, 17 U.S.C., §§ 101, et seq. DC is the owner of the DC Copyrighted Designs and, as featured on and in connection with various merchandise, these designs constitute copyrightable subject matter under the Copyright Act of 1976, 17 U.S.C. §§ 101, et seq.

G.    DC has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to the copyrights to the DC Copyrighted Designs, and DC Comics owns one or more certificates of registration for works in which each of the DC Copyrighted Designs appear. An index of representative copyright registrations for the DC Copyrighted Designs is attached as Exhibit A.

H.    Products featuring the DC Copyrighted Designs manufactured, sold and distributed by DC or under its authority have been manufactured, sold and distributed in conformity with the provisions of the copyright laws. DC and those acting under its authority have complied with their obligations under the copyright laws and DC has at all times been and still is the sole proprietor or otherwise authorized to enforce all right, title and interest in and to the copyrights in each of the DC Copyrighted Designs.

I.    DC owns all right, title and interest in and to and holds exclusive right to develop, manufacture, market and sell products bearing the trademarks, trade names, service marks, artwork, characters and other distinctive elements for and incorporating the DC Characters.

J.    DC is the owner of world famous registered marks that serve to distinguish DC's products. Each year DC spends millions of dollars to develop and maintain the considerable goodwill it enjoys in its trademarks and in its reputation for high quality. A representative list of trademark registrations for the DC Comics Characters is attached as Exhibit B (collectively the "DC Trademarks"), including, but not limited to, the trademark registration of the Superman "S" device depicted below:



K.    The DC Trademarks are all valid, extant and in full force and effect. The DC Trademarks are all exclusively owned by DC Comics. DC has continuously used each of the DC Trademarks from the registration date, or earlier, until the present and at all times relevant to the claims alleged in this Complaint.

L.    DC Comics has granted and transferred to its related companies, Warner Bros. Consumer Products Inc., Warner Bros. Home Entertainment Inc. and WB Studio Enterprises Inc., subsidiaries of Warner Bros., the

9

right to supervise in the United States the merchandising and licensing of the copyrighted elements, trademarks, trade names and service marks incorporated in or associated with the DC Characters. Currently, Plaintiffs have numerous active license agreements in the United States. These agreements provide for the authorized use of the DC Characters on products and in connection with services, including toys and games, candy and food services, records, tapes and CD's, jewelry, watches, furniture, stationary, toiletries, t-shirts and numerous items of children's and adult apparel, among others.

      M.    As a result of advertising and sales, together with longstanding consumer acceptance, the DC Trademarks identify DC's products and authorized sales of these products. The DC Trademarks have each acquired secondary meaning in the minds of consumers throughout the United States and the world. The DC Copyrighted Designs and the DC Trademarks are collectively referred to herein as the "DC Properties."

      7.    Plaintiff Nike, Inc. is a corporation duly organized and existing under the laws of the State of Oregon, having its principal place of business in Beaverton, Oregon.

      A.    Nike is engaged in the manufacture, design, and sale of footwear, apparel, and related accessories. Among other products, Nike manufactures, sells, and distributes basketball and running shoes. Products manufactured and sold by Nike are sold bearing several marks including the

"NIKE" mark, an arbitrary and distinctive emblem which has come to be known as the "Swoosh Design," a composite mark consisting of the word "Nike" and the "Swoosh Design", or an arbitrary and distinctive emblem which has come to be known as "Jumpman". Nike uses these marks on shoes and apparel as trademarks of Nike's high-quality products. Nike also developed and used the "Nike Air" and "Just Do It" marks as trademarks for its shoes and apparel. Nike sells in excess of $13,000,000,000.00 per year in merchandise bearing its distinctive trademarks.

       B.     All products noted above are sold with the "NIKE", "Swoosh Design", or composite "NIKE" and "Swoosh Design" marks. Nike adopted and used the "NIKE" and "Swoosh Design" marks in 1971. Some, but not all, of Nike's registered marks and registration numbers are noted below:

      i.    Nike registered the "NIKE" mark in block letters on November 2, 1982; Registration No. 1,214,930 in class 25 for footwear.

      ii.    Nike registered the "Swoosh Design" on March 5, 1985; Registration No. 1,323,343 in class 25 for footwear.

      iii.    Nike registered the composite mark of "NIKE" and the "Swoosh Design" on March 19, 1985; Registration No. 1,325,938 in class 25 for footwear.

      iv.    Nike registered the "NIKE AIR" mark on July 3, 1984; Registration No. 1,284,386 in class 25 for footwear.

v. Nike registered the "AIR JORDAN" mark on November 12, 1985; Registration No. 1,370,283 for footwear and apparel in class 25.

vi. Nike registered the "AIR JORDAN" design on December 22, 1992; Registration No. 1,742,019 for apparel and sports bags in class 18 and apparel and backpacks in class 25.

vii. Nike registered the "AIR JORDAN" design on September 26, 1989; Registration No. 1,558,100 for footwear and apparel in class 25.

viii. Nike registered the "JUST DO IT" mark on January 24, 1995; Registration No. 1,875,307 for apparel in class 25.

Nike's trademarks will hereinafter be collectively referred to as the "Nike Trademarks". These marks are indexed on Exhibit B.

8.    Plaintiff, Sanrio, Inc. (hereinafter "Sanrio" or "Plaintiff"), is a corporation duly organized and existing under the laws of the State of California, having its principal place of business in South San Francisco, California. Sanrio is a wholly-owned subsidiary of Sanrio Company, Ltd. Sanrio Company, Ltd. is a corporation organized under the laws of Japan, having its principal place of business in Tokyo, Japan (hereinafter referred to as "Sanrio Company").

A.    For more than forty years, Sanrio Company has been engaged in the business of manufacturing, distributing and selling a wide range of products

including, without limitation, character artwork created, developed and designed by Sanrio Company for use by children and young adults. Certain of the characters and designs have achieved such global fame and popularity that Sanrio Company has produced and distributed television programming for children based on the character artwork. One such television program is the animated television series entitled *Hello Kitty.*

B.   A significant source of revenue for Sanrio Company is the merchandising and licensing of distinctive elements bearing character artwork, including Bad Badtz Maru, Chococat, Hello Kitty, KeroKeroKeroppi, Landy, Little Twin Stars, Monkichi, My Melody, Patty and Jimmy, Pekkle, Picke Bicke, Pochacco, Tuxedo Sam, Winkipinki, and Zashikbuta (hereinafter individually and collectively referred to as the "Sanrio Company Characters").

C.   The revenue from products using the Sanrio Company Characters sold in the United States is substantial. The appearance and other features of Sanrio Company's Properties are inherently distinctive and serve to identify Sanrio Company as the source of products bearing the Sanrio Company Characters. The design, configuration and distinctive features of the Sanrio Company Characters and other Sanrio Company copyrighted works, and of works related thereto (hereinafter individually and collectively referred to as the "Sanrio Company Copyrighted Designs") are wholly original with Sanrio Company and, as fixed in various tangible media including, without limitation, merchandise, are

copyrightable subject matter under the United States Copyright Act, 17 U.S.C., § 101, *et seq.* Sanrio Company is the owner of the Sanrio Company Copyrighted Designs and, as featured on and in connection with various merchandise, these designs constitute copyrightable subject matter under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*

      D.    Sanrio Company has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to the copyrights to Sanrio Company's Copyrighted Designs, and Sanrio Company owns one or more certificates of registration for works in which each of Sanrio Company's Copyrighted Designs appear. A representative sample of copyright registrations for Sanrio Company's Copyrighted Designs is indexed on Exhibit A. Sanrio Company's Copyrighted Designs manufactured, sold, and distributed by Sanrio Company or under its authority have been manufactured, sold, and distributed in conformity with the provisions of the copyright laws. Sanrio Company and those acting under its authority have complied with their obligations under the copyright laws. Sanrio, as the exclusive United States licensee for Sanrio Company, is authorized to enforce all right, title, and interest in and to the copyrights in each of Sanrio Company's Copyrighted Designs.

      E.    Sanrio Company owns all right, title and interest in and to and holds exclusive rights to develop, manufacture, market, and sell products bearing

the trademarks, trade names, service marks, artwork, characters, and other distinctive elements for and incorporating Sanrio Company's Characters.

      F.     Sanrio Company is the owner of world famous registered marks which serve to distinguish Sanrio Company products. Some of those trademarks have been used continuously for over twenty-five years. Each year Sanrio Company spends millions of dollars to develop and maintain the considerable good will it enjoys in its trademarks and in its reputation for high quality. A sample of trademark registrations for Sanrio Company's Characters is indexed on Exhibit B.

      G.     Sanrio Company's Trademarks are all valid, extant, and in full force and effect. Sanrio Company's Trademarks are exclusively owned by Sanrio Company. Sanrio Company has continuously used each of Sanrio Company's Trademarks from the registration date, or earlier, until the present and at all times relevant to the claims alleged in this Complaint.

      H.     As a result of advertising and sales, together with longstanding consumer acceptance, Sanrio Company's Trademarks identify Sanrio Company's products and authorized sales of these products. Sanrio Company's Trademarks have each acquired secondary meaning in the minds of consumers throughout the United States and the world. Since issuance of the registrations, Sanrio Company has given notice that the marks are registered pursuant to 15 U.S.C. § 1111 by displaying the registration symbol "®". Sanrio, as the exclusive United States licensee for Sanrio

Company, is authorized to enforce all right, title, and interest in and to the copyrights in each of Sanrio Company's Trademarks.

I.      Through it's exclusive United States licensee Sanrio, Sanrio Company has authorized and licensed the manufacture and sale of various different types of product which bear the "Sanrio Company Properties" including, but not limited to, soft sculpture toys, mirrors, and similar products.

9.      Plaintiff, Disney Enterprises, Inc., (hereinafter "Disney" or "Plaintiff") is a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business in Burbank, California.

A.      Disney, or one of various subsidiary companies wholly owned by Disney, is engaged is a variety of businesses, including the operation of the Walt Disney World resort complex and Disneyland park, producing and distributing motion pictures and television programs, operating stores and hotels, producing and selling books, records and tapes, and providing entertainment. A significant aspect of Disney's business is the merchandising and licensing of distinctive elements associated with its motion pictures and television programs including, but not limited to, the world-famous fanciful characters Mickey Mouse, Minnie Mouse, Donald Duck, Daisy Duck, Goofy and Pluto, as well as Disney's animated motion pictures, including, but not limited to, "Pinocchio," "The Lion King," "Aladdin," "Beauty and the Beast," "The Little Mermaid," "Snow White and The Seven Dwarfs," "Pocahontas," "Hunchback of Notre Dame," "Hercules," "Mulan," "Toy

Story," "The Emperors New Groove," and "Lilo and Stitch. Disney also jointly owns the copyrights to the feature movies "A Bug's Life," "Tarzan," "Monsters, Inc.," "Finding Nemo" and "The Incredibles" (hereinafter collectively referred to as "Disney Copyrighted Movies and Characters").

        B.      Each of the Disney Copyrighted Movies and Characters noted in subparagraph A. above is covered by a copyright registration with the U. S. Copyright Office. Various copyright registrations were made in the name of Walter E. Disney. In October 1934, Walter E. Disney assigned his copyrights to Walt Disney Productions Ltd. ("WDPL"), and filed a copy of such assignment ("The Assignment") with the Copyright Office. In September 1938, WDPL and Walt Disney Enterprises ("WDE") and Liled Realty and Investment Company, Ltd., were consolidated into Walt Disney Enterprises. A copy of the consolidation agreement was filed with the Copyright Office. In December 1938, pursuant to an amendment to its articles of incorporation, Walt Disney Enterprises changed its name. A copy of the 1938 certificate of amendment of the articles of incorporation ("The 1938 Name Change") to Walt Disney Productions ("WDP") was filed with the Copyright Office. In February 1986, pursuant to an amendment to its articles of incorporation, WDP changed its name to The Walt Disney Company. A copy of the 1986 certificate of amendment ("The 1986 Name Change") was filed with the Copyright Office. In February 1996, pursuant to further amendment to its articles of incorporation, The Walt Disney Company again changed its name to Disney Enterprises, Inc. A copy of

the 1996 certificate of amendment ("The 1996 Name Change") was filed with the Copyright Office. Some, but not all of the applicable copyright registrations covering the characters and properties noted above in subparagraph A are indexed on Exhibit A.

        C.     Disney also owns all rights, title, and interest in and to, and holds the exclusive rights to market and sell merchandise bearing the trademarks, trade names, service marks, artwork, characters and other distinctive elements for and related to the Disney Copyrighted Movies and Characters (hereinafter the "Disney Trademarks"). Disney adopted one or more of the Disney Trademarks for diverse articles and registered their trademarks with the United States Patent and Trademark Office. The Disney Trademarks are indexed on Exhibit A and attached as aggregate Exhibit B.

Defendants

10.    Defendant, JJ General Merchandise LLC d/b/a JJ Discount (hereinafter "JJ General" or "Defendant") is a limited liability company duly organized and existing under the laws of the State of Florida, having its principal place of business at 2070 East Osceola Parkway, Kissimmee, FL 34743 and also doing business at 7800 Highway 17-92 South, Fern Park, FL 32730.

11.    Defendant, Hemchander Lall d/b/a JJ Discount (Hereinafter "H Lall" or "Defendant") is an individual doing business in the State of Florida and in this District, and who, upon information and belief is a manager and controlling force

18

behind the business know as JJ Discount located at 2070 East Osceola Parkway, Kissimmee, Fl 34743 and 7800 Highway 17-92 South, Fern Park, FL 32730 and who, upon information and belief resides at 201 Alydar Court, Orlando, FL 32824.

12.     Defendant, Sitir Lall d/b/a JJ Discount (hereinafter "S Lall" or "Defendant") is an individual doing business in the State of Florida and in this District, and who, upon information and belief is a manager and controlling force behind the business know as JJ Discount located at 2070 East Osceola Parkway, Kissimmee, Fl 34743 and 7800 Highway 17-92 South, Fern Park, FL 32730 and who, upon information and belief resides at 201 Alydar Court, Orlando, FL 32824.

## FACTUAL BACKGROUND

13.     Each of the Plaintiffs have created or utilized the copyrighted works and distinctive trademarks indexed on Exhibits A and B. Each of the distinctive trademarks signifies to the purchaser that the product originates exclusively with the Plaintiff or trademark owner and is manufactured to the highest-quality standards. Additionally, each of the copyrighted properties have become so popular that each of the Plaintiffs owning copyrighted properties have at one time or another licensed them in conjunction with apparel and related merchandise. Whether the Plaintiffs manufacture the product themselves or license others to do it, each of the named Plaintiffs has insured that products bearing its trademarks or licensed trademarks are manufactured to the highest standard.

14.     The enormous popularity of Plaintiffs' products is not without costs, as evidenced by the increasing numbers of counterfeiters in the United States and worldwide.

15.     Each of the Defendants named in this Complaint has been and threatens to continue to import, distribute, offer for sale and sell counterfeit shoes, jewelry, watches, toys, beach towels and other merchandise bearing exact copies, or colorable imitations of the Plaintiffs' distinctive trademarks, licensed trademarks, and copyrights. None of the Defendants have ever been authorized by the Plaintiffs at any time to reproduce, manufacture, import, copy or sell any shoes, jewelry, watches, toys, beach towels or related merchandise bearing the Plaintiffs' trademarks, licensed trademarks and copyrights.

INFRINGING CONDUCT

16.     Defendants are in the business of importing, selling, distributing and offering for sale counterfeit shoes, jewelry, watches, toys, beach towels and other merchandise bearing exact copies, or colorable imitations of the Plaintiffs' distinctive trademarks, licensed trademarks and copyrights (hereinafter referred to as the "Unauthorized Product"). Photographs of counterfeit merchandise purchased from Defendants are attached hereto as aggregate Exhibit C.

17.     Defendants import, sell, distribute and offer for sale the Unauthorized Product through their retail businesses located at 2070 East Osceola Parkway,

Kissimmee, Fl 34743 and 7800 Highway 17-92 South, Fern Park, FL 32730 and under the name JJ General Merchandise LLC d/b/a JJ Discount.

18.     Prior to initiating this lawsuit, Plaintiffs sent cease and desist letters to Defendants on September 1, 2009. On September 3, 2009, Plaintiffs' counsel received a telephone call from H. Lall agreeing to cease and desist in the sales of the Unauthorized Product and to turning over the Unauthorized Product. On October 2, 2009, Defendants were still selling the Unauthorized Product. See Exhibit D.

19.     The Plaintiffs have made demand upon the Defendants to cease and desist in the further sale of the Unauthorized Product. Notwithstanding these demands, and with actual as well as constructive notice, Defendants continue to sell, distribute, import and offer for sale the Unauthorized Product through their retail locations.

20.     The Defendants have not been authorized by the Plaintiffs at any time to reproduce, manufacture, import, copy or sell any product, including shoes, jewelry, watches, toys, beach towels and other merchandise bearing exact copies, or colorable imitations of the Plaintiffs' distinctive trademarks, licensed trademarks and copyrights.

COUNT I – COPYRIGHT INFRINGEMENT (17 U.S.C. §101)

21.     Plaintiffs, Warner Bros. Entertainment, Inc., DC Comics, Sanrio, Inc. and Disney Enterprises, Inc. bring the following claim of copyright infringement against the Defendants and incorporate by reference allegations 1 through 20 above.

For the purpose of Count I, the Plaintiffs listed in this paragraph shall be referred to as the "Copyright Plaintiffs".

22.     Defendants have imported, manufactured, duplicated, distributed, sold, or offered for sale jewelry, watches, toys, beach towels and other unauthorized or counterfeit merchandise bearing the copyrighted properties of the Copyright Plaintiffs, including but not limited to Disney's "Tinkerbell", "Mickey Mouse", "Minnie Mouse", "Cinderella", "Snow White", "Aristocats" characters, D.C. Comics' "Superman" design, Warner Bros. "Tweety" character, and Sanrio's "Hello Kitty" character. An itemized list of some of the copyrighted registrations covering these properties appears in Exhibit A.

23.     Defendants have never been authorized by the Copyright Plaintiffs to distribute the Copyright Plaintiffs' copyrighted properties; nor have the Copyright Plaintiffs every authorized, licensed, or in any manner allowed the Defendants the right to manufacture, distribute, sell or offer for sale any jewelry, watches, toys, beach towels or other merchandise bearing any of said copyrighted properties.

24.     Defendants have imported, manufactured, duplicated, distributed, sold, or offered for sale unauthorized or counterfeit jewelry, watches, toys, beach towels and other merchandise which incorporate the Copyright Plaintiffs' copyrighted properties, in direct violation of the Copyright Plaintiffs' copyrights.

25.     Each Defendant, individually or in conspiracy with the other named Defendants, has imported, manufactured, duplicated, distributed, sold, or offered

for sale unauthorized or counterfeit jewelry, watches, toys, beach towels and other merchandise bearing the Copyright Plaintiffs' copyrighted properties. Defendants committed their acts with actual as well as constructive knowledge of the Copyright Plaintiffs' exclusive rights, and their actions have contributed to the infringing, copying, duplication, sale, and offer for sale of counterfeit copies of the Copyrights Plaintiffs' copyrighted properties.

26.     Each of the acts by each Defendant, which infringes one of the Copyright Plaintiffs' copyrights, is the basis for a separate claim against each Defendant under the Copyright Act. For the sake of brevity, each and every allegation set forth which is pertinent to each separate claim by the Copyright Plaintiffs against each Defendant is repeated as to each such claim with the same force and effect as if such claim and the pertinent allegation had been set forth separately and in full.

27.     Upon information and belief, Defendants' acts as alleged are willful infringements of and have irreparably harmed the Copyright Plaintiffs' copyrights and exclusive rights, and threaten further infringements and further irreparable harm to Copyright Plaintiffs' copyrights and exclusive rights. Further harm and injury to Copyright Plaintiffs is imminent, and the Copyright Plaintiffs are without an adequate remedy at law with respect to such harm and injury. Unless Defendants' acts are stopped, it is highly probably that one or more of the Defendants, or others under their direction, will manufacture, distribute, sell, or

offer for sale additional counterfeit merchandise which bear the Copyright Plaintiffs' copyrighted properties causing further irreparable injury to Copyright Plaintiffs.

28.    Defendants have obtained gains, profit, and advantages as a result of their wrongful acts noted above.

29.    The Copyright Plaintiffs are entitled, at their option, to statutory damages as provided by 17 U.S.C. §504 in lieu of actual damages and the Defendants' profits.

COUNT II – TRADEMARK INFRINGEMENT
AND TRADEMARK COUNTERFEITING

30.    Plaintiffs, Warner Bros. Entertainment Inc., DC Comics, Nike, Inc., Sanrio, Inc. and Disney Enterprises, Inc., incorporate by reference paragraphs 1 through 20, and bring the following claim for trademark infringement pursuant to 15 U.S.C. §1114, against the Defendants.

31.    The Plaintiffs own the exclusive trademark rights to those trademarks indexed on Exhibit B. All of the trademark registrations are in full force and effect and are owned by the Plaintiffs. In may cases the trademarks have become incontestable pursuant to 15 U.S.C. §1065.

32.    Plaintiffs, or those under their authority, manufacture and distribute all of their products and advertising in conformity with the provisions of the United States Trademark Law.

33.    Notwithstanding the Plaintiffs' well-known and prior common law and statutory rights in their trademarks, Defendants have adopted and used the

trademarks in the State of Florida and interstate commerce. Defendants committed their acts with actual notice of the Plaintiffs' federal registration rights and long after the Plaintiffs established their rights in the trademarks.

34.    Defendants' committed their acts of infringement of Plaintiffs' registered trademarks in the Middle District of Florida, within the jurisdiction of this Court. Defendants imported, manufactured, distributed, sold, and offered for sale shoes, jewelry, watches, toys, beach towels and other merchandise bearing the Plaintiffs' trademarks without the authorization of the Plaintiffs and continue to offer for sale such products to the public. Defendants sold or offered for sale shoes, jewelry, watches, toys, beach towels and other merchandise bearing the Plaintiffs' trademarks in the Middle District of Florida and interstate commerce, thus creating the likelihood of confusion, deception and mistake.

35.    Each Defendant, individually or in conspiracy with the other named Defendants, have imported, manufactured, distributed, sold or offered for sale counterfeit or unauthorized shoes, jewelry, watches, toys, beach towels and other merchandise bearing the Plaintiffs' distinctive trademarks. Defendants' acts were done with actual and constructive knowledge of the Plaintiffs' exclusive rights, and have contributed to the infringing, copying, duplication, sale and offer for sale of counterfeit copies of merchandise bearing the Plaintiffs' distinctive trademarks.

36.    Each of the acts, which infringe one of the Plaintiffs' separate trademarks, is the basis for a separate claim against each Defendant under the

Lanham Act. For the sake of brevity, each and every allegation set forth which is pertinent to each separate claim by each Plaintiff against each Defendant is repeated as to each such claim with the same force and effect as if such claim and the pertinent allegation had been set forth separately and in full.

37.     Defendants' acts of infringement will cause irreparable injury to the Plaintiffs if the Defendants are not restrained by the Court from further violation of the Plaintiffs' rights as Plaintiffs have no adequate remedy at law.

38.     Plaintiffs have suffered damages as a result of the Defendants' acts.

39.     Defendants' use in commerce of the Plaintiffs' trademarks in the sale of the unauthorized or infringing shoes, jewelry, watches, toys, beach towels and other merchandise is an infringement of the Plaintiffs' registered trademarks in violation of 15 U.S.C. §1114(1).

40.     Upon information and belief, Defendants committed the alleged acts intentionally, fraudulently, maliciously, willfully, wantonly, and oppressively with the intent to injure the Plaintiffs and their businesses.

COUNT III – LANHAM ACT – UNFAIR COMPETITION

41.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 20 and 31 through 40 above.

42.     As a direct result of the Plaintiffs' longstanding use, sales, advertising, and marketing, the Plaintiffs' trademarks have acquired a secondary and distinctive

meaning among the public who have come to identify the Plaintiffs' trademarks listed on Exhibit B with the Plaintiffs and their respective products.

43.     The unauthorized shoes, jewelry, watches, toys, beach towels and other merchandise that the Defendants have sold and distributed exactly duplicate and appropriate the Plaintiffs' trademarks and deludes and confused the public into believing that the Plaintiffs approved, authorized, or sponsored the unauthorized merchandise sold, offered for sale, or distributed by the Defendants.

44.     Defendants, by misappropriating and using the likenesses of the Plaintiffs' trademarks in connection with the sale of the unauthorized shoes, jewelry, watches, toys, beach towels and other merchandise, is misrepresenting and will continue to misrepresent and falsely describe to the general public the origin and sponsorship of their products. Defendants have caused such products to enter into interstate commerce willfully with full knowledge of the falsity of the designation of their origin and description and representation in an effort to mislead the purchasing public into believing that their products are authorized or emanate from the Plaintiffs.

45.     These acts constitute a violation of Section 43 of the Lanham Act, 15 U.S.C. §1125.

46.     The Defendants have obtained gains, profits, and advantages as a result of their unlawful acts.

47. The Plaintiffs have suffered monetary damages as a result of the Defendants' acts.

COUNT IV – UNFAIR COMPETITION UNDER FLORIDA'S COMMON LAW

48. Plaintiffs repeat and reallege paragraphs 1 through 20, 22 through 29, 31 through 40 and 42 through 47 of this Complaint.

49. Plaintiffs have expended significant sums of money in advertising and marketing products featuring their trademarked and copyrighted properties, and in creating a consumer demand for such products in Florida and elsewhere in the United States. Consequently, these products have become widely known and accepted.

50. Defendants have distributed and sold unauthorized shoes, jewelry, watches, toys, beach towels and other merchandise bearing exact copies of the Plaintiffs' trademarks in Florida, thereby passing them off as products authorized or distributed by the Plaintiffs.

51. Defendants have knowingly and willfully appropriated the Plaintiffs' trademarks in an effort to create the impression that the Defendants' counterfeit products are sanctioned by the Plaintiffs and to misappropriate all of the goodwill associated with the Plaintiffs' trademarks.

52. The Defendants acts constitute unfair competition and will, unless enjoined by this Court, result in the destruction or dilution of the goodwill in the Plaintiffs' trademark rights to the unjust enrichment of the Defendants.

53.   The unauthorized products that are sold by the Defendants are calculated and likely to deceive and mislead the purchasers who buy them in the belief that they originate with or are authorized by the Plaintiffs.

54.   The continued passing off by the Defendants of such unauthorized products as if such products originated from the Plaintiffs has caused and, unless restrained, will continue to cause serious and irreparable injury to the Plaintiffs.

55.   The Plaintiffs have no adequate remedy at law and suffer irreparable harm as a result of the Defendants' acts.

56.   The Plaintiffs have suffered damages as a result of the Defendants' acts.

### COUNT V – DILUTION IN VIOLATION OF FLA. STAT §495.151

57.   The Plaintiffs repeat and reallege paragraphs 1 through 20, 22 through 29, 31 through 40, 41 through 47 and 49 through 56 of this Complaint.

58.   The infringing and unauthorized acts of the Defendants as alleged above have and will continue to have the effect of diluting and tarnishing the distinctive quality of the Plaintiffs' trademarks. Said acts constitute an unlawful dilution of the Plaintiffs' rights at common law and under the Florida Anti-Dilution Statute, Fla. Stat. §495.151.

59.   The Defendants' commercial exploitation of the Plaintiffs' trademarks in conjunction with the unauthorized shoes, jewelry, watches, toys, beach towels and other merchandise will cause confusion in the marketplace regarding the

sponsorship and origin of such merchandise and will tarnish the Plaintiffs' reputations in the marketplace.

60.    The Plaintiffs have no adequate remedy at law and have suffered irreparable harm and damage as a result of the Defendants' acts. The Plaintiffs will continue to suffer irreparable harm and damage as a result of Defendants' acts unless injunctive relief is granted as prayed herein.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand entry of a judgment against the defendants as follows:

1.    Permanent injunctive relief restraining the Defendants, their officers, agents, servants, employees, attorneys, and all those in active concert or participation with them from:

a.    further infringing the Plaintiffs' trademarked and copyrighted properties by importing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying, or otherwise disposing of any products not authorized by the Plaintiffs including, but not limited to, the unauthorized shoes, jewelry, watches, toys, beach towels and other merchandise bearing any simulation, reproduction, counterfeit, copy or colorable imitation of any of the Plaintiffs' trademarked and copyrighted properties ("Unauthorized Products");

b.    using any simulation, reproduction, counterfeit, copy, or colorable imitation of any of the Plaintiffs' trademarked and copyrighted properties

in the promotion, advertisement, display, sale, offer for sale, production, circulation, or distribution of Unauthorized Products in such a fashion as to relate or connect, or tend to relate or connect, such products in any way to the Plaintiffs or to any goods sold, sponsored, or approved by or connected with the Plaintiffs;

c.     making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act that can or is likely to lead the trade or public, or individual members thereof, to believe that any unauthorized shoes, jewelry, watches, toys, beach towels and other merchandise sold by the Defendants are in any manner associated or connected with the Plaintiffs, or are sold, manufactured, licensed, sponsored, approved, or authorized by the Plaintiffs;

d.     engaging in any other activity constituting unfair competition with the plaintiffs, or constituting an infringement of any of the Plaintiffs' trademarks or of the Plaintiffs' rights in, or to use or to exploit said Plaintiffs' trademarks, or constituting any dilution of any of the Plaintiffs' names, reputations, or goodwill;

e.     effecting assignments or transfers, forming new entities or other associations or using any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs a. through d.;

f.     secreting, destroying, altering, removing, or otherwise dealing with the Unauthorized Products or any books or records that may contain any

information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, or displaying of all unauthorized products that infringe any of the Plaintiffs' trademarked and copyrighted properties; and

g.    from aiding, abetting, contributing to, or otherwise assisting anyone from infringing upon any of the Plaintiffs' trademarked and copyrighted properties.

2.    Directing that Defendants deliver for destruction all Unauthorized Products, including shoes, jewelry, watches, toys, beach towels and other merchandise, and labels, signs, prints, packages, dyes, wrappers, receptacles, software and advertisements relating thereto in their possession or under their control bearing any of the Plaintiffs' trademarks or any simulation, reproduction, counterfeit, copy or colorable imitations thereof, and all plates, molds, software and other means of making the same.

3.    Directing that the Defendants report to this Court within thirty (30) days after a Permanent Injunction is entered to show their compliance with paragraphs 1 and 2 above.

4.    Directing such other relief as the Court may deem appropriate to prevent the trade and public from gaining the erroneous impression that the Plaintiffs authorized or are related in any way to any products sold or otherwise circulated or promoted by the Defendants.

5.     That Plaintiffs be awarded from each Defendant selling products containing unauthorized trademarks belonging to such Plaintiff three times such Defendants' profits therefrom, after an accounting, pursuant to 15 U.S.C. §1114 and §1117, or at the election of Plaintiffs, statutory damages as provided by §1117(c) of between One Thousand Dollars ($1,000) and Two Hundred Thousand Dollars ($200,000), per trademark per type of good sold, which is counterfeited by each Defendant, at the Court's discretion, or should this Court find that the Defendants' use of the counterfeit mark is willful, and in the Court's discretion, not more than Two Million Dollars ($2,000,000) per counterfeit mark per type of god sold by each Defendant.

6.     That each of the Plaintiffs be awarded from each Defendant selling products containing unauthorized trademarks belonging to such Plaintiff three times such Defendant's profits therefrom, after an accounting, pursuant to 15 U.S.C.§1125(a) and §1117.

7.     That all the Plaintiffs be awarded their reasonable attorney's fees and investigative fees pursuant to 15 U.S.C. §1117 and 17 U.S.C. §505.

8.     That the Copyright Plaintiffs be awarded from each Defendant found to be in violation of their copyrighted properties, the Defendant's profits, or at the Copyright Plaintiffs' election, an award of statutory damages pursuant to 17 U.S.C. §504, of no less than Seven Hundred and Fifty Dollars ($750) nor more than Thirty Thousand Dollars ($30,000) per copyrighted property infringed upon by each

Defendant, at the Court's discretion, or should this Court find that such infringement was willful, that this Court, pursuant to its discretion, award statutory damages of up to One Hundred and Fifty Thousand Dollars ($150,000) for each copyrighted property infringed upon by each Defendant.

9.     Awarding punitive damages to the Plaintiffs for the Defendants' willful acts of unfair competition under Florida's common law.

10.    That all the Plaintiffs have such other and further relief that this Court deems just.

Respectfully submitted.

Dated this 5th day of November, 2009.

Michael W.O. Holihan
Florida Bar No.: 0782165
Stephanie Boomershine
Florida Bar No. 0046667
Holihan Law
1101 North Lake Destiny Drive
Suite 275
Maitland, FL 32751
Phone: 407.660.8575
Fax: 407.660.0510
Email: michael.holihan@holihanlaw.com
stephainie boomershine@holihanlaw.com
Attorneys and Trial Counsel for Plaintiffs